UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Michael Hicks, *Plaintiff*, v. P.O. Jenkins, *et al. Defendants.* | No. 21 CV 4350 Judge Lindsay C. Jenkins |

MEMORANDUM OPINION AND ORDER

Plaintiff Michael Hicks sued Chicago Police Officer Jamaul Jenkins alleging Jenkins used excessive force against him during an arrest on September 7, 2020, in violation of 42 U.S.C. §1983.[1] Jenkins now moves for summary judgment, arguing the force he used was reasonable, and that he should otherwise receive qualified immunity. Because the Court agrees that Jenkins, at minimum, is entitled to qualified immunity, the motion is granted.

I. BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 statements and supporting exhibits, including video exhibits.[2] [Dkts. 62, 66, 71-4, 74.] The Court

---

[1] Hicks also sued Chicago Police Officer Brandon McCoy for failing to intervene and the City of Chicago for indemnification. [Dkt. 31.] The parties have since dismissed the claims against McCoy. [Dkt. 53.]

[2] A court may consider video evidence on summary judgment, but a video can only resolve a factual dispute where "there could be no reasonable disagreement about what the video depicts." *Kailin v. Vill. of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023); *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (on summary judgment, "[w]hen the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape.") The sound quality of the video in this case is good and the words spoken are audible. The recording is nothing like the grainy, soundless video in *Kailin*, where "the entire video of the critical event

1

presents the facts in the light most favorable to Plaintiff. *Emad v. Dodge Cty.*, 71 F.4th 649, 650 (7th Cir. 2023). These facts are undisputed except where a dispute is noted.

On September 7, 2020, Jenkins and McCray were patrolling in a marked Chicago police vehicle when dispatch called to alert them that shots had been fired and there was a suspect with a gun. [Dkt. 71-4 ¶¶ 8-11.] Jenkins and McCray drove to the area, and while near 56th Street and Wentworth Avenue in Chicago, they identified an individual who matched the suspect's description. The individual was Plaintiff Hicks, who was carrying a Louis Vuitton bag with a gun inside. [*Id.* ¶¶ 13-15, 18.] The officers approached Hicks and asked to speak with him several times. Eventually, the officers, who were in uniform, asked Hicks to turn around and place his hands on the wall. Hicks then attempted to flee, but tripped and fell after running only a few feet. [*Id.* ¶¶ 19-27.]

The officers caught up to Hicks and attempted to arrest him, but Hicks resisted. The officers' body-worn cameras ("BWC") indisputably show Hicks refused to obey commands from the officers to put his hands behind his back, and fought being handcuffed by moving his arms and body in various positions. [*Id.* ¶¶ 29-32; *see also e.g.,* Dkt. 66, Ex. F at 3:00-5:00.] The officers called for backup to help subdue Hicks. When additional officers arrived, Hicks was still not handcuffed and refused to obey

---

last[ed] a mere six seconds" and "a reasonable juror might see different things in that inkblot of a blur." *Id.* at *5. The Court can therefore rely on the footage to resolve many factual disputes that ordinarily would be for a jury to decide.

police demands to stop resisting. After roughly five minutes, police officers were able to place Hicks in handcuffs. [*Id.* ¶¶ 34-42.]

This is when the actions precipitating this lawsuit began. Once Hicks was handcuffed, Jenkins moved to stand Hicks up so that he could be moved to a police vehicle. Although the parties disagree to some extent on what happened next, the Court concludes the BWC footage establishes "there could be no reasonable disagreement" on several key points. *Kailin*, 77 F.4th 476, at 481. First, Jenkins tells Hicks "to get your ass up" as he lifts Hicks off the ground, to which Hicks responds "suck my dick." [Dkt. 66, Ex. H at 5:15-5:20; Ex. I at 3:10-3:13.] Then, while nearly fully standing and facing Jenkins, Hicks told Jenkins "I'm going to spit in your damn face."[3] [Dkt. 66, Ex. H at 5:20-5:22; Ex. I. at 3:13-3:15; *see also* Dkt. 71-4 at ¶¶ 46-49.] In response, Jenkins takes his open right hand, places it on Hicks's neck and shoves Hicks, causing Hicks to fall to the ground on his back (with his handcuffed hands underneath him). [Dkt. 66, Ex. G at 6:45-6:47; Ex. I at 3:14-3:17.] According to Jenkins, he pushed Hicks to neutralize the threat of being spit on; Hicks contends this was excessive force. [Dkt. 71-4 ¶¶ 53-54.]

Based on Jenkins's shove and the shove alone, Hicks filed this lawsuit. Jenkins now moves for summary judgment, arguing the force was reasonable under the circumstances and that he is entitled to qualified immunity. [Dkt. 63.]

---

[3] Hicks admits he was "talking smack" to officers before he was shoved, but he contends in his LR 56.1(b)(3) responses that he "cannot recall" whether he threatened to spit on Jenkins and that "the body-worn camera evidence speaks for itself." [Dkt 71-4 ¶¶ 46-50.] Indeed. The video footage is irrefutable, so Hicks's memory of what he said does not create a genuine dispute of material fact.

3

## II. LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Ultimately, summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Schacht v. Wis. Dept' of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)).

## III. ANALYSIS

Jenkins argues he is entitled to summary judgment for two reasons. First, shoving Hicks to the ground was reasonable given Hicks's continuous and active resistance, and his threat to spit on Jenkins. [Dkt. 63 at 4-7.][4] Second, his actions did not violate a clearly established right, so he is entitled to qualified immunity. [*Id.* at 8-10.] The Court concludes it need only address the second argument to resolve the motion.[5]

---

[4] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.
[5] Although the Court assumes *arguendo* that Jenkins's force was excessive, it has serious doubts this is the case. *See e.g., Floyd v. Squires*, 2024 WL 3292815 (N.D. Ill. July 3, 2024) (holding officers use of force leading to inmate's wrists bleeding from handcuff tension reasonable where inmate threatened to spit on officers and was otherwise actively resisting); *Padula v. Leimbach*, 656 F.3d 595, 602 (7th Cir. 2011) ("[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth

4

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Siler v. City of Kenosha*, 957 F.3d 751, 758 (7th Cir. 2020). This inquiry focuses on two issues: "whether the plaintiff's allegations make out a deprivation of a constitutional right and whether the right was clearly established at the time of defendant's alleged misconduct." *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021). The Court may consider these issues in either order. *Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023).

"A party seeking to defeat qualified immunity must show both elements; on the other hand, the defendant obtains qualified immunity by blocking either part." *Holloway v. City of Milwaukee*, 43 F.4th 760, 767 (7th Cir. 2022) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018)). "Qualified immunity is an affirmative defense, but once the defendant raises it, the burden shifts to the plaintiff to defeat it." *Taylor*, 10 F. 4th 800, at 805. Hicks has three options for demonstrating that a right was clearly established:

> First, by identifying a closely analogous case finding the alleged violation unlawful. Second, by identifying in the relevant caselaw such a clear trend ... that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time. ... [T]hird ..., reserved for rare cases, arguing that [the defendant's] conduct was so egregious and unreasonable that no reasonable official could have thought he was acting lawfully.

---

Amendment." (cleaned up)); *cf. Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 475 (7th Cir. 1997) (police officers cannot "shove, push, or otherwise assault innocent citizens *without any provocation whatsoever*") (emphasis added).

*Stockton v. Milwaukee County*, 44 F.4th 605, 620-21 (7th Cir. 2022) (cleaned up). When determining whether a right was clearly established, courts must "look at past cases with specificity", *Lopez v. Sheriff of Cook Cty.*, 993 F.3d 981, 988 (7th Cir. 2021), to determine if "the existing precedent … place[s] the statutory or constitutional question beyond debate." *Taylor*, 10 F.4th at 807. The facts of the previous case do not need to be identical, but a reasonable officer must be on notice that his actions are violating the constitutional right. *Id.*

Hicks does not contend Jenkins's conduct was so egregious as to satisfy the "rare case", nor does he identify any clear trends in caselaw. [*See* Dkt. 71 at 8-11.] Instead, Hicks argues it is clearly established "that a law enforcement officer cannot use unreasonable and excessive force against a suspect who is already handcuffed" and that Jenkins shoving Hicks was unreasonably excessive because Hicks was so restrained.[6] [Dkt. 71 at 9-10.] But Hicks fails to offer a factually analogous case. The only case Hicks substantively discusses at all[7] is *Howard v. Ealing*—a district court case that stands for the bland proposition that police officers cannot use force against a subdued, non-resisting arrestee. *Howard*, 876 F. Supp. 2d 1056, 1070 (N.D. Ind. 2012) (qualified immunity inappropriate where plaintiff maintained he was not resisting when officers "removed him from his van, shoved or threw him against the van, and then threw him on the ground.")

---

[6] Hicks devotes a substantial portion of his qualified immunity brief to arguing Jenkins lied in his post-incident reports, and that one of Jenkins's superiors noted the shove appeared excessive. [Dkt. 71 at 9-10.] Hicks does not explain, nor does the Court understand, how either of these points aids the Court's analysis in determining whether Jenkins violated a clearly established right.

[7] Hicks's "discussion" of *Howard* is limited to a single sentence. [Dkt. 71 at 10.]

In this case, however, Hicks admits that he was resisting arrest for about five minutes prior to being handcuffed, that he continued to resist as Jenkins stood him up, and that he was facing Jenkins when he threatened to spit in Jenkins's face. [Dkt. 71-4 ¶¶ 42, 44, 49; *see also* Dkt 71 at 10 ("Although Plaintiff was resisting…").] *Howard* is not "closely analogous" to this case. *Stockton*, 44 F.4th 605, at 620-21.

Based on the undisputed facts, a closely analogous case would be one where an officer's use of force (here, a shove) was found to be excessive notwithstanding the fact the officer was responding to a credible and imminent threat of battery (here, being spit on) from an actively resisting arrestee.[8] Hicks declined to supply such authority, instead relying on vague propositions untethered to the facts of this case. This is insufficient to defeat qualified immunity. *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) ("specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts"); *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014) (an officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it"); *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) ("[q]ualified immunity cannot be defeated simply by alleging a violation of extremely abstract rights") (cleaned up). Put simply, Hicks has not cited to any caselaw that establishes Jenkins had a "fair warning" that his conduct would

---

[8] The Court notes that Hicks's threat of spitting on Jenkins occurred on September 7, 2020, in the midst of the Covid-19 pandemic.

7

be considered unlawful, which entitles him to qualified immunity. *Wheeler v. Lawson*, 539 F.3d 629, 640 (7th Cir. 2008).

## IV. CONCLUSION

Jenkins's motion for summary judgment is granted. And because the claims against Jenkins are dismissed, so too are the indemnification claims against Chicago. *See e.g., Darko v. City of Chicago*, 2024 WL 2209675, at *5 (N.D. Ill. May 15, 2024) (indemnification claims are necessarily tied to the underlying liability claims, and cannot survive when the latter are dismissed).

Enter: 21 CV 4350
Date: July 30, 2024

_____
Lindsay C. Jenkins
United States District Judge